UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAUREN CUNNINGHAM, *individually and as a representative of a class of participants and beneficiaries in and on behalf of the USI 401(k) Plan*,

                            Plaintiff,

-against-

USI INSURANCE SERVICES, LLC, BOARD OF DIRECTORS OF USI INSURANCE SERVICES, LLC, USI 401(K) PLAN COMMITTEE, and JOHN and JANE DOES 1-30,

                            Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __03/25/2022__

No. 21 Civ. 1819 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

    Plaintiff Lauren Cunningham, a participating employee of the USI 401(k) Plan (the "Plan"), brings this putative class action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, against Defendants USI Insurance Services, LLC ("USI"), its Board of Directors (the "Board"), the USI 401(k) Plan Committee (the "Plan Committee"), and John and Jane Does 1-30. She alleges that Defendants breached their fiduciary duties of prudence and loyalty, and failed to adequately monitor other fiduciaries, by employing USI Consulting Group ("USICG"), their own subsidiary, to provide retirement plan services ("RPS") to participating employees of the Plan and allowing USICG to charge excessive fees for such services. (*See* Compl. at 22–43.) Presently pending before the Court is Defendants' motion to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 30.) For the following reasons, the Court GRANTS Defendants' motion to dismiss.

## BACKGROUND

### I. Factual Background

The following facts are derived from the Complaint and are taken as true and constructed in the light most favorable to Plaintiff for the purposes of this motion.

USI offers its employees the Plan, a 401(k)-savings plan designed to provide them with a vehicle to invest for retirement. (Compl. ¶¶ 31, 39.) The Plan is a defined contribution retirement plan in which participants contribute a percentage of their earnings through an individual account. (*Id.* ¶ 38.) The ultimate retirement benefit provided to Plan participants depends on the performance of investment options held within the account, net fees, and expenses. (*Id.* ¶ 39.)

USI is the Plan's sponsor and administrator, as well as a fiduciary because it is responsible for the administration and operation of the Plan and has discretion to control its operation. (*Id.* ¶ 31). The Plan Committee is also designated as an administrator and another fiduciary responsible for day-to-day administration and operation of the Plan. (*Id.* ¶ 33.) The Board appoints the members of the Plan Committee and has authority to terminate the Plan. (*Id.* ¶ 32.) "On information and belief, the Board . . . and its members, in their individual capacities, exercised authority and control over Plan management and its assets since at least 2015, and thus are [also] Plan fiduciaries." (*Id.*) Defendants selected USICG, a subsidiary of USI, to serve as the Plan's recordkeeper to provide RPS to participating employees. (*Id.* ¶¶ 17, 82.) USCIG assessed and charged the fees associated with its RPS to the Plan participants (*Id.* ¶ 40.)

Plaintiff alleges that Defendants failed to prudently and loyally monitor the Plan's RPS expenses, instead allowing the Plan to pay USICG nearly three times what a prudent and loyal fiduciary would have paid for such services. (*Id.* ¶ 83.) Specifically, she claims that Plan participants pay USICG excessive RPS fees because it extracts these fees directly from their accounts, as well as indirectly through the investment options that contain revenue sharing. (*Id.* ¶

2

95.) She claims that the Plan is paying more for RPS provided by USICG than other smaller plans, and that USICG's fees were excessive "when compared with other similar-sized plans receiving materially the same services." (*Id.* ¶ 90.) These excessive RPS fees led to lower net returns, eating into, and substantially reducing the retirement savings of Plaintiff and other Plan participants, resulting in millions of dollars in additional losses to them, to the benefit of USI. (*Id.*)

## II. Procedural Background

On March 2, 2021, Plaintiff filed the instant Complaint (Compl., ECF No. 1.) On April 19, 2021, Defendants sought leave to file a motion to dismiss, which the Court subsequently granted and issued a briefing schedule. (ECF Nos. 27 & 29.) On July 8, 2021, the parties filed their respective briefing on the instant motion: Defendants their notice of motion (ECF No. 30), memorandum in support ("Motion," ECF No. 31), declaration with accompanying exhibits (Youngwood Decl., ECF No. 32), and reply ("Reply," ECF No. 36); and Plaintiffs their response in opposition ("Response in Opposition," ECF No. 33) and a declaration with accompanying exhibits (Wood Decl., ECF No. 34).

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Freidus v. Barclays Bank PLC,* 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550

U.S. at 555. In applying these principles, the Court may consider facts alleged in the complaint and documents attached to it or incorporated by reference. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks and citation omitted).

## II. ERISA Fiduciary Duties

ERISA imposes upon fiduciaries "a number of detailed duties and responsibilities, which include the proper management, administration, and investment of [plan] assets, the maintenance of proper records, the disclosure of specified information, and the avoidance of conflicts of interest." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251–52 (1993) (internal quotation marks omitted) (alteration in original). ERISA is a "comprehensive and reticulated statute" which statutorily defines these duties. *Id.* at 251 (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361 (1980)).

An ERISA fiduciary has a duty of loyalty, which requires that he "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A). An ERISA fiduciary also has a duty of prudence, which requires that the fiduciary act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B).

To state a claim for breach of fiduciary duty, a complaint must allege that (1) the defendant was a fiduciary who (2) was acting in a fiduciary capacity, and (3) breached his fiduciary duty. *See id.* § 1109.

## DISCUSSION

Plaintiff asserts claims under ERISA against Defendants for breach of the duties of prudence and loyalty, and for failure to adequately monitor other fiduciaries. (*See* Compl. at 37–

43.) Defendants seek to dismiss all three claims against them for failure to state a claim. Specifically, they argue that: (1) Plaintiff disregards the pleading requirement that a claim for breach of the duty of prudence premised on excessive fees must establish that the fees were excessive relative to the specific services rendered; (2) Plaintiff's claim for breach of the duty of loyalty fails because the allegations underlying that claim represent a mere repackaging of the "excessive fee" allegations; and (3) Plaintiff's claim for failure to monitor fails because it is premised on her futile claim for breach of duty of prudence. (*See* Mot. at 11–26.)

The Court analyzes Defendants' arguments in that order.

I.   **Breach of the duty of prudence**

As noted above, under ERISA, the duty of prudence requires a plan fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Courts determine whether a fiduciary acted with the requisite care "according to the objective prudent person standard developed in the common law of trusts." *Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2006). "[U]nder trust law, a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828–29 (2015); *accord Moreno v. Deutsche Bank Ams. Holding Corp.*, 2016 WL 5957307, at *5 (S.D.N.Y. Oct. 13, 2016).

In analyzing a claim for breach of the duty of prudence, courts must evaluate the "fiduciary's conduct in arriving at an investment decision, not on its results, and ask whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013). "In other words, courts analyze a fiduciary's *process* to determine prudence, not [the] outcome." *Ferguson v. Ruane Cunniff &*

5

*Goldfarb Inc.*, No. 17-CV-6685 (ALC), 2019 WL 4466714, at *5 (S.D.N.Y. Sept. 18, 2019) (emphasis in original). "[W]here a plaintiff fails to allege facts about a defendant fiduciary's decision-making process, the claim may survive only if there are enough circumstantial factual allegations to allow the court to reasonably infer the process was flawed." *Id.* (quoting *Morgan Stanley*, 712 F.3d at 718 (internal quotation marks omitted)).

Here, Plaintiff circumstantially alleges that Defendants breached their duty of prudence because they failed to monitor the Plan's RPS expenses, instead allowing the Plan to pay USICG nearly three times what a prudent fiduciary would have paid for such services. (Compl. ¶¶ 83, 140.) Specifically, she claims that Plan participants pay USICG excessive RPS fees because it extracts these fees directly from their accounts, as well as indirectly through the investment options that contain revenue sharing. (*Id.* ¶ 95.) She claims that the Plan is paying more for RPS provided by USICG than other smaller plans, and that USICG's fees were excessive "when compared with other similar-sized plans receiving materially the same services." (*Id.* ¶ 90.) These excessive RPS fees led to lower net returns, eating into, and substantially reducing the retirement savings of Plaintiff and other Plan participants, resulting in millions of dollars in additional losses to them, to the benefit of USI. (*Id.*)

In support, the Complaint provides a table compiled of data from the 2018 Form 5500[1] filings of several "comparable" retirement savings plans. (*Id.* ¶ 101.) In this table, Plaintiff identifies ten plans with a range of different number of participants, assets, recordkeeping and

---

[1] "The Department of Labor ("DOL") issued regulations requiring 401(k) plan service providers to file certain disclosures through an annual report called 'Form 5500.'" *Jacobs v. Verizon Commc'ns, Inc.*, No. 16 CIV. 1082 (PGG), 2017 WL 8809714, at *2 n.3 (S.D.N.Y. Sept. 28, 2017); *see also* 29 C.F.R. § 104a-5. "The Form 5500 is an 'Annual Return/Report of Employee Benefit Plan.'" *Malinowski v. Lichter Grp., LLC*, No. Civ. WDQ-14-917, 2015 WL 857511, at *1 n.9 (D. Md. Feb. 26, 2015) (citing 29 C.F.R. § 2520.103-1(b)(1) (2013)). Form 5500 is required to be filed with the Internal Revenue Service ("IRS") and DOL. *See In re Ins. Brokerage Antitrust Litig.*, No. Civ. 04-5184 (GEB), 2008 WL 141498, at *3 (D.N.J. Jan. 14, 2008).

administrative ("RK&A") price, and RK&A price per participant. (*Id.*) The table also contains Plaintiff's own calculated estimates of the Plan's average number of participants, RK&A price, and RK&A price per participant from its Form 5500 filings from 2015 to 2019. (*Id.*) Ultimately, the table shows that while the other plans' RK&A price per participant range between $28 and $53, the one for the Plan is $109. (*Id.*)

But Defendants argue that Plaintiff fails to sufficiently allege that the Plan's RPS fees were excessive in relation to the specific services USICG provides to the Plan. (*See* Mot. at 11.) They argue that while Plaintiff's excessive fee allegations attempt to compare these other "cherry-picked 401(k) plans" with the Plan based on certain figures, Plaintiff fails to allege how these retirement savings plans are comparable in the *services* they render as required by *Young v. General Motors Investment Management Group*, 325 F. App'x 31 (2d Cir. 2009). (*Id.* at 11–12.) Defendants argue that because Plaintiff "never benchmarks the services USICG provides against the services participants in these purportedly 'comparable' plans receive," then Plaintiff is merely conclusorily alleging that the Plan and the others are "materially identical," "materially similar," or "the same." (*Id.* at 12 (quoting Compl. ¶¶ 87, 88, 89, 90, 102, 104).)

In short, Defendants contend that for Plaintiff to state a claim, she "must allege facts from which one could infer the *same* services were available for less on the market." (*Id.* at 11 (quoting *Wehner v. Genentech, Inc.*, No. 20-cv-06894-WHO, 2021 WL 507599, at *5 (N.D. Cal. Feb. 9, 2021) (hereinafter, "*Wehner I*") (emphasis in original). The Court agrees.

Relying on *Young*, other courts have held that "a plaintiff must plead administrative fees that are excessive in relation to the *specific* services the recordkeeper provided to the *specific* plan at issue." *Wehner I*, 2021 WL 507599, at *5; *see also Kong v. Trader Joe's Co.*, No. CV2005790PAJEMX, 2020 WL 5814102, at *5 (C.D. Cal. Sept. 24, 2020) ("Courts regularly

7

dismiss imprudence claims such as these for failing to allege an adequate market comparison."); *Ferguson*, 2019 WL 4466714, at *8 ("Plaintiffs fail to allege that the administrative 'fees were excessive relative to the services rendered.'"); *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2016 WL 4502808, at *14 (N.D. Cal. Aug. 29, 2016) (noting that a plaintiff must allege "facts from which one could infer that the same services were available for less on the market." (citing *Young*, 325 F. App'x. at 33)); *Johnson v. Providence Health & Servs.*, No. C17-1779-JCC, 2018 WL 1427421, at *8 (W.D. Wash. Mar. 22, 2018) ("Plaintiff does not plausibly allege that another recordkeeper would have provided the same services at a lower cost than Fidelity.").

Here, Plaintiff generally alleges that the retirement savings plans in the Complaint's table are comparable because they are of similar size, have similar number of participants, and provide "materially the same services." (Compl. ¶¶ 90, 101.) But as Defendants correctly point out, and as confirmed by Plaintiff's own exhibit submitted with her response in opposition, the service codes in the 2018 Form 5500 filings of these plans indicate that the services provided are different or more limited than those the Plan participants receive. (*See* Wood Decl., Ex. 1 (Summary of Comparison Plans (¶101) and Service Codes).) Most notably, none of these ten purportedly "comparable" plans offer participants the pension consulting or valuation services USICG offers to the Plan participants. (*See id.*); *see also Wehner I*, 2021 WL 507599, at *1 ("Imprudence cannot be reasonably inferred from Wehner's apples-to-oranges comparisons regarding the Plan's fees and funds.").

To be sure, the pleading standard in *Young* does not require Plaintiff to plead only those retirement savings plans reporting *wholly identical* service codes in the Form 5500 filings. But at the very least, Plaintiff must plead those retirement savings plans that provide the same "basket of services" for her excessive fee claim to be viable. *See Wehner v. Genentech, Inc.*, No. 20-CV-

8

06894-WHO, 2021 WL 2417098, at *5 (N.D. Cal. June 14, 2021) (hereinafter, "*Wehner II*") (denying motion to dismiss excessive fee claim despite plaintiff only pleading retirement savings plans offering the same "basket of services" or with "similar service disclosures on their Form 5500s"). Conceivably, Plaintiff could sufficiently plead a viable claim by pleading similarly sized retirement savings plans that in combination could cover all of the services that the Plan here provides. Indeed, some of the plans pleaded here could still help Plaintiff sufficiently allege a viable claim when pleaded together with other similarly sized plans that offer pension consulting and valuation services like those USICG offers to the Plan participants.

But most significantly, Plaintiff's allegations also crucially fail because there is no "indication of how [she] calculated the per-participant fees for recordkeeping and administrivia costs" for the Plan and each of the comparable retirement savings plans. *Wehner I*, 2021 WL 507599, at *6. Particularly, Plaintiff's excessive fees claim is based on USICG allegedly charging fees to the Plan participants *directly* through periodic deductions from their accounts, and *indirectly* through revenue sharing. (Compl. ¶¶ 92–93, 95.) That said, Plaintiff seems to allege that the Plan's RK&A price per participant of $109 in the Complaint's table is the average of the sum of the Plan's direct and indirect fees per participant from 2015 to 2019. However, Plaintiff fails to specify how she calculated the Plan's *indirect* fees because they are not available by themselves on the Form 5500 filings. *See, e.g.*, *Marks v. Trader Joe's*, No. 19-CV-10942, 2020 WL 2504333, at *6 (C.D. Cal. Apr. 24, 2020) (dismissing fee claim because plaintiffs alleged, without factual support, that the recordkeeper was receiving "indirect compensation" in addition to flat per-participant fees); *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2017 WL 2352137, at *16 (N.D. Cal. May 31, 2017) (dismissing fee claims where, *inter alia*, plaintiffs alleged that the plan paid

9

administrative and recordkeeping fees in the form of "internal revenue sharing," but judicially noticeable documents did not reflect any such payments), *aff'd*, 752 F. App'x 453 (9th Cir. 2018).

In fact, nowhere in the Complaint does Plaintiff provide any figures, estimates, or formulas from which the Court could reasonably infer Plaintiff obtained such results. Instead, Plaintiff alleges that (i) $49 per year were deducted directly from the Plan participants' accounts; and (ii) the money amounts that USICG received as direct compensations from 2015 and 2019. (*Id.* ¶¶ 92–93.) Plaintiff then generally alleges that USICG indirectly charged Plan participants through sub-transfer agency fees (without mentioning any figures), after which she offers another table allegedly providing for the sum of the direct and indirect fees charged to each Plan participant for each year from 2015 to 2019. (*Id.* ¶¶ 94–97.) Plaintiff also fails to explain how she calculated those same figures for each the other "comparable" plans she includes in the table in her Complaint. (*Id.* ¶ 101.)

In sum, the Complaint's allegations fail because Plaintiff fails to allege first, how she calculated the Plan's the sum of the direct and indirect fees from the Form 5500 filings, *Wehner I*, 2021 WL 507599, at *6, and second, how the sum of those fees is excessive in relation to the specific services USICG provides to the Plan by pleading other plans with "similar service disclosures on their Form 5500s," *Wehner II*, 2021 WL 2417098, at *5.[2] Accordingly, the Court dismisses Plaintiff's claim for breach of the duty of prudence without prejudice.

---

[2] Plaintiff's argument that *Young* is not controlling simply because it is an unpublished decision is unpersuasive. (Resp. in Opp'n at 15). As another court in this Circuit noted, "it is not clear that *Young* is a Summary Opinion" that has no precedential effect. *Laboy v. Bd. of Trustees of Bldg. Serv. 32 BJ SRSP*, No. 11 CIV. 5127 HB, 2012 WL 701397, at *2 n. 5 (S.D.N.Y. Mar. 6, 2012); *see also* 2d. Cir. Local Rules 32.1.1(a) ("[R]ulings by summary order do not have precedential effect."). But "[m]ore importantly, however, '[t]he Court is not persuaded that it is at liberty not only to disregard but contradict a Second Circuit ruling squarely on point merely because it was rendered in a summary order.'" *Laboy*, 2012 WL 701397, at *2 n. 5 (quoting *United States v. Tejada*, No. 07 Cr. 502, 2010 WL 4967977, at *2 (S.D.N.Y. Dec. 2, 2010)).

## II.     Breach of the duty of loyalty

Plaintiff next claims that Defendants breached their duty of loyalty by employing their own subsidiary, USICG, as the Plan's recordkeeper, and allowing the Plan to pay USICG "multiples of the reasonable per-participant amount for the Plan's RPS fees" at the expense of the Plan participants and for Defendants' own benefit. (Compl. ¶ 157.) But Defendants contend that Plaintiff's claim for breach of the duty of loyalty fails because it is duplicative of her claim for the breach of the duty of prudence. (Mot. at 17–18.) After due consideration, the Court agrees with Defendants.

ERISA's duty of loyalty charges fiduciaries with acting "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries[ ] and . . . defraying reasonable expenses." 29 U.S.C. § 1104(a)(1)(A). "To state a claim for breach of the duty of loyalty, a plaintiff must do more than allege that a defendant failed to act for the exclusive purpose of providing benefits to participants." *Ferguson*, 2019 WL 4466714, at *4. "Rather, a plaintiff must allege plausible facts supporting an inference that the defendant acted for the purpose of providing benefits to itself or someone else." *Id.* (citing *In re DeRogatis*, 904 F.3d 174, 191 (2d Cir. 2018).

Here, Plaintiff's allegations relating to her claim for breach of the duty of loyalty and those relating to her claim for breach of the duty of prudence closely mirror each other. (*Compare* Compl. ¶ 140 (breach of the duty of prudence) ("Allowing the Plan to pay multiples of the reasonable per-participant amount for the Plan's retirement plan service fees; . . . Failing to defray reasonable expenses of administering the Plan.") *with id.* ¶ 157 (breach of the duty of loyalty) ("Allowing the Plan to pay USICG multiples of the reasonable per-participant amount for the Plan's RPS fees, which ultimately inured to the benefit of the Plan sponsor; . . . Failing to defray reasonable expenses of administering the Plan.").)

In effect, even when construing the Complaint in the light most favorable to her, Plaintiff's claim for breach of the duty of loyalty appears intrinsically dependent on her claim for breach of the duty of prudence. In other words, if Plaintiff's claim for breach of the duty of prudence fails, then her claim for breach of duty of loyalty will also consequently fail. Thus, because Plaintiff essentially "recast[s] purported breaches of the duty of prudence as disloyal acts," she fails to sufficiently state a claim for breach of the duty of loyalty. *See Rosen v. Prudential Ret. Ins. & Annuity Co.*, 718 F. App'x 3, 7 (2d Cir. 2017) (quoting *Sacerdote v. NYU*, No. 16-cv-6284 (KBF), 2017 WL 3701482, at *5 (S.D.N.Y. Aug. 25, 2017)). Accordingly, the Court dismisses Plaintiff's claim for breach of the duty of loyalty without prejudice.

### III. Plaintiff's claim for failure to monitor

Lastly, Plaintiff alleges that Defendants failed to monitor other fiduciaries because they failed to: (i) evaluate the performance of individuals responsible for RPS fees for the Plan; (ii) monitor the process by which the Plan RPS provider was evaluated and investigate the availability of lower-cost RPS; and (iii) remove individuals responsible for RPS fees whose performance was inadequate in that these individuals permitted the USI Plan to pay the same RPS fees notwithstanding the purported availability of less expensive options. (Compl. ¶ 150.) In other words, as Defendants correctly point out, Plaintiff's claim for failure to monitor is premised, once again, on her claim that Defendants breached their duty of prudence. (Mot. at 17.)

Because "[a] claim for breach of the duty to monitor requires an antecedent breach to be viable," *In re Bear Stearns Cos.*, 763 F. Supp. 2d 423, 580 (S.D.N.Y. 2011), and Plaintiff fails to sufficiently state a claim that Defendants breached either their duties of prudence and loyalty, the Court concludes that Plaintiff's claim for failure to monitor also fails. *See, e.g., Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 368 (2d Cir. 2014) ("Plaintiffs' latter two claims—failure to monitor and breach of co-fiduciary duty—constitute derivative claims that cannot survive absent

a viable claim for breach of a duty of prudence."); *In re Lehman Bros. Sec. & ERISA Litig.*, 113 F. Supp. 3d 745, 764 (S.D.N.Y. 2015) ("The duty to monitor claim against Fuld fails because the TCAC fails to allege plausibly any primary breach of fiduciary duty on the part of the Plan Committee Defendants."); *see also Wehner I,* 2021 WL 507599, at *11 ("Because Wehner's [claim for breach of the duty of prudence] is subject to dismissal, his [failure to monitor] claim necessarily fails."); *Davis v. Salesforce.com, Inc.*, No. 20-CV-01753-MMC, 2020 WL 5893405, at *7 (N.D. Cal. Oct. 5, 2020) (dismissing failure to monitor claim as derivative of insufficiently pleaded breach of fiduciary claim); *Dorman v. Charles Schwab Corp.*, No. 17-CV-00285-CW, 2018 WL 6803738, at *7 (N.D. Cal. Sept. 20, 2018) (same).

Therefore, the Court dismisses the entirety of Plaintiff's Complaint.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss (ECF No. 30) and DISMISSES Plaintiff's Complaint without prejudice. Plaintiff is granted leave to file an Amended Complaint. If Plaintiff chooses to do so, she will have until May 20, 2022, to file an Amended Complaint. Defendants are then directed to answer or otherwise respond by June 20, 2022. If Plaintiff fails to file an Amended Complaint within the time allowed, and she cannot show good cause to excuse such failure, any claims dismissed without prejudice by this opinion and order may be deemed dismissed with prejudice. The Clerk of Court is directed to terminate the motion at ECF No. 30.

Dated: March 25, 2022
      White Plains, NY

SO ORDERED:

_____
NELSON S. ROMÁN
United States District Judge