UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/11/2023
```

LAUREN CUNNINGHAM, *individually and as a representative of a class of participants and beneficiaries in and on behalf of the USI 401(k) Plan*,

                                    Plaintiff,

-against-

USI INSURANCE SERVICES, LLC, BOARD OF DIRECTORS OF USI INSURANCE SERVICES, LLC, USI 401(K) PLAN COMMITTEE, and JOHN and JANE DOES 1-30,

                                    Defendants.

No. 21 Civ. 1819 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Lauren Cunningham, a participating employee of the USI 401(k) Plan (the "Plan"), brings this putative class action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, against Defendants USI Insurance Services, LLC ("USI"), its Board of Directors (the "Board"), the USI 401(k) Plan Committee (the "Plan Committee"), and John and Jane Does 1-30. She alleges Defendants breached their fiduciary duties of prudence and loyalty, and failed to adequately monitor other fiduciaries, by employing USI Consulting Group ("USICG"), their wholly-owned subsidiary, to provide retirement plan services ("RPS") to participating employees of the Plan and allowing USICG to charge excessive fees for such services. (*See* ECF No. 44, Amended Complaint, "Amend. Compl." ¶¶ 10-16.) Presently before the Court is Defendants' motion to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6). (ECF No. 55.) For the following reasons, the Court GRANTS Defendants' motion to dismiss.

**BACKGROUND**

### I. Factual Background

The following facts are derived from the Amended Complaint and are taken as true and constructed in the light most favorable to Plaintiff for the purposes of this motion.

USI offers its employees the Plan, a 401(k)-savings plan designed to provide them with a vehicle to invest for retirement. (Amend. Compl. ¶¶ 7, 29, 37.) The Plan is a defined contribution retirement plan in which participants contribute a percentage of their earnings into one or more investment options through an individual account. (*Id.* ¶¶ 7, 37-38.) As of December 31, 2020, with 10,898 participants and more than $1 billion in net assets, the Plan is larger than 99.60% of defined contribution plans by number of participants and lager than 99.83% by amount of assets, making it a "large" retirement plan. (*Id.* ¶ 7.) The retirement benefits provided to Plan participants depend on the value of their investment accounts, as determined by the market performance of contributions, minus expenses. (*Id.* ¶ 38, 44.)

USI serves as the Plan's fiduciary, as well as sponsor and administrator, because it is responsible for the administration and operation of the Plan and has discretion to control its operation. (*Id.* ¶ 8.) The Plan Committee is also designated as an administrator and another fiduciary responsible for day-to-day administration and operation of the Plan. (*Id.* ¶ 26.) The Board appoints the members of the Plan Committee and has authority to terminate the Plan. (*Id.* ¶ 25.) "On information and belief, the Board . . . and its members, in their individual capacities, exercised authority and control over Plan management and its assets since at least 2015, and thus are [also] Plan fiduciaries." (*Id.*) Defendants selected USICG, a subsidiary of USI, to serve as the Plan's administrative services provider, providing RPS services to participating employees. (*Id.* ¶¶ 11, 95.) USI informed Plan participants they were paying $24.50 per quarter ($90 per year) for "the multitude of administrative and recordkeeping services USICG provides participants" and 1.5 basis points (0.015%) of

participants' account balances for "services to design and maintain a compliant investment infrastructure including ongoing Investment Policy Statement maintenance." (*Id.* ¶ 96, 99.) To pay USICG for recordkeeping for the Plan, Defendants relied on (1) direct compensation and (2) indirect, revenue-sharing compensation, where the mutual fund plan participants choose to invest in pays the plan's recordkeeper for administrative and recordkeeping services. (*Id.* ¶¶ 73-74.)

Plaintiff alleges Defendants breached their duties of prudence and loyalty to the Plan and its participants, including Plaintiff, by using USI's wholly owned subsidiary USICG as the Plan's RPS provider, which caused the participants to pay excessive and unreasonable fees (both direct and indirect). (*Id.* ¶ 11-14.) Specifically, she claims that USICG charged Plan participants administrative and recordkeeping fees that were "excessive relative to the type and quality of the services received by the Plan when benchmarked against other similar-sized plans for similar recordkeeping and administrative services." (*Id.* ¶¶ 101.) Plaintiff further alleges that Defendants failed to prudently and loyally monitor the Plan's RPS expenses, instead allowing the Plan to pay USICG twice the reasonable fee for such services. (*Id.* ¶¶125-130.) These excessive RPS fees reduced Plaintiff's and the Plan participants' account balances and resulted in significantly diminished investment returns. (*Id.* ¶ 14.) In addition to imprudently allowing USICG to act as RPS provider and to charge unreasonable, excessive fees, Plaintiff alleges Defendants failed to investigate alternative RPS providers to determine if similar services were available at a lower cost. (*Id.* ¶¶ 13, 125-130.)

**II. Procedural Background**

On March 2, 2021, Plaintiff filed her initial Complaint. (ECF No. 1, Complaint, "Compl.") On March 25, 2022, the Court issued an Opinion & Order granting Defendants' motion to dismiss Plaintiff's Complaint, dismissing her claims without prejudice. (ECF No. 43.) The Court also granted leave for Plaintiff to file an Amended Complaint, and Plaintiff did so on May 20, 2022. (*Id.* at 13.)

On September 6, 2022, Defendants sought leave to dismiss Plaintiff's Amended Complaint, which the Court granted the following day. (ECF Nos. 53-54.) On December 28, 2022, the parties filed their respective briefing on the instant motion: Defendants their notice of motion (ECF No. 55), memorandum in support (ECF No. 56 , "Def. Mem"), declaration of Jonathan K. Youngwood with accompanying exhibits (ECF No. 57, "Youngwood Decl."), and reply (ECF No. 60, "Reply"); and Plaintiff her response in opposition (ECF No. 58, "Pl. Opp.,) and declaration of Paul R. Wood with accompanying exhibits (ECF No. 59, "Wood Decl."). on March 27, 2023, Plaintiff also filed a Notice of Supplemental Authority. (ECF No. 62.)

## LEGAL STANDARD

### I. Federal Rule of Civil Procedure 12(b)(6)

In deciding a motion to dismiss under Rule 12(b)(6), the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Freidus v. Barclays Bank PLC,* 734 F.3d 132, 137 (2d Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action will not do"; rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. In applying these principles, the Court may consider facts alleged in the complaint and documents attached to it or incorporated by reference. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (internal quotation marks and citation omitted).

### II. ERISA Fiduciary Duties

ERISA imposes upon fiduciaries "a number of detailed duties and responsibilities, which include the proper management, administration, and investment of [plan] assets, the maintenance of

4

proper records, the disclosure of specified information, and the avoidance of conflicts of interest." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251–52 (1993) (internal quotation marks omitted) (alteration in original). ERISA is a "comprehensive and reticulated statute" which statutorily defines these duties. *Id.* at 251 (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361 (1980)).

An ERISA fiduciary has a duty of loyalty, which requires that he "discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A). An ERISA fiduciary also has a duty of prudence, which requires that the fiduciary act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." *Id.* § 1104(a)(1)(B).

To state a claim for breach of fiduciary duty, a complaint must allege that (1) the defendant was a fiduciary who (2) was acting in a fiduciary capacity and (3) breached his fiduciary duty. *See id.* § 1109.

## DISCUSSION

The Court previously dismissed Plaintiff's Complaint because she (1) failed to allege sufficient facts to allow a reasonable inference that the same services were available from other retirement savings plans for a lower price and (2) failed to provide "any figures, estimates, or formulas" to determine how she calculated the total direct and indirect fees paid by the Plan. *Cunningham v. USI Ins. Servs., LLC*, No. 21 CIV. 1819 (NSR), 2022 WL 889164, at *4-*5 (S.D.N.Y. Mar. 25, 2022). Because her claim for breach of the duty of prudence failed, the Court held her claims for breach of the duty of loyalty and failure to monitor failed as well. *Id.* at *5-*7.

In her Amended Complaint, Plaintiff asserts the same claims under ERISA for breach of the duties of prudence and loyalty, and for failure to adequately monitor other fiduciaries. (*See* Amend. Compl. ¶¶ 151-178.) Defendants again seek to dismiss all three claims against them for failure to state a claim. Specifically, Defendants argue Plaintiff has failed to cure the deficiencies in her original Complaint: (1) Plaintiff does not allege how she calculated the indirect fees charged by USICG; (2) Plaintiff has failed to allege facts sufficient to support a reasonable inference that competitors provide the same "basket of services" as USICG at a lower price; (3) Plaintiff's claim for breach of the duty of loyalty fails because the allegations underlying that claim represent a mere repackaging of the "excessive fee" allegations; (4) Plaintiff's duty of loyalty claim fails alongside her duty of prudence claim and, even if it doesn't, it is time-barred; and (5) because Plaintiff's breach of prudence claim fails, her failure to monitor claim must also fail. (*See* Def. Mem. at 4–19.) Finally, if Plaintiff's claims survive, Defendants further argue the Court should dismiss Plaintiff's claims against the Board because the Board members were not "named fiduciaries." (*Id.* at 19-23.) For the reasons discussed below, the Court dismisses Plaintiff's Amended Complaint in its entirety.

**I.      Breach of the Duty of Prudence**

As noted above, under ERISA, the duty of prudence requires a plan fiduciary to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). Courts determine whether a fiduciary acted with the requisite care "according to the objective prudent person standard developed in the common law of trusts." *Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2006). "[U]nder trust law, a fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones." *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828–29 (2015); *accord Moreno v. Deutsche Bank Ams. Holding Corp.*, 2016 WL 5957307, at *5 (S.D.N.Y. Oct. 13, 2016).

In analyzing a claim for breach of the duty of prudence, courts must evaluate the "fiduciary's conduct in arriving at an investment decision, not on its results, and ask whether a fiduciary employed the appropriate methods to investigate and determine the merits of a particular investment." *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013). "In other words, courts analyze a fiduciary's *process* to determine prudence, not [the] outcome." *Ferguson v. Ruane Cunniff & Goldfarb Inc.*, No. 17-CV-6685 (ALC), 2019 WL 4466714, at *5 (S.D.N.Y. Sept. 18, 2019) (emphasis in original). "[W]here a plaintiff fails to allege facts about a defendant fiduciary's decision-making process, the claim may survive only if there are enough circumstantial factual allegations to allow the court to reasonably infer the process was flawed." *Id.* (quoting *Morgan Stanley*, 712 F.3d at 718 (internal quotation marks omitted)).

While Plaintiff cures the deficiencies related to her calculations of direct and indirect fees USICG charged the Plan, Plaintiff fails to sufficiently plead USICG's fees are excessive or unreasonable compared to similarly-sized RSP providers providing similar services.

A.   *Plaintiff's Calculation of Indirect Fees*

As discussed above, Plaintiff's excessive fees claim is based on USICG allegedly charging fees to the Plan participants *directly* through periodic deductions from their accounts, and *indirectly* through revenue sharing. (Amend. Compl. ¶¶ 69-74.) In her Amended Complaint, Plaintiff used the Form 5500s,[1] to determine Plan participants paid USICG between $79 and $152 per year, for an

---

[1] "The Department of Labor ("DOL") issued regulations requiring 401(k) plan service providers to file certain disclosures through an annual report called 'Form 5500.'" *Jacobs v. Verizon Commc'ns, Inc.*, No. 16 CIV. 1082 (PGG), 2017 WL 8809714, at *2 n.3 (S.D.N.Y. Sept. 28, 2017); *see also* 29 C.F.R. § 104a-5. "The Form 5500 is an 'Annual Return/Report of Employee Benefit Plan.'" *Malinowski v. Lichter Grp., LLC*, No. Civ. WDQ-14-917, 2015 WL 857511, at *1 n.9 (D. Md. Feb. 26, 2015) (citing 29 C.F.R. § 2520.103-1(b)(1) (2013)). Form 5500 is required to be filed with the Internal Revenue Service ("IRS") and DOL. *See In re Ins. Brokerage Antitrust Litig.*, No. Civ. 04-5184 (GEB), 2008 WL 141498, at *3 (D.N.J. Jan. 14, 2008).

average of $101 per year, in recordkeeping and administrative fees. (*Id.* ¶¶ 102-103.) She describes her method for calculating the total amount of indirect compensation USICG received as follows:

> Plaintiff calculated indirect compensation paid by the Plan's investment options by reviewing the investments listed in Schedule H, Part IV, Line 4(i) of Form 5500s, reviewing Schedule C, Part I, Line 3 to see if any revenue sharing rates were disclosed, using prospectuses for the Plan's mutual funds that disclose revenue sharing rates to determine the appropriate revenue sharing rate for each investment option and other publicly available sources, then multiplying the year-end assets for each investment option from Schedule H by the appropriate revenue sharing rate to determine the total amount of indirect compensation received by USICG[.]

(*Id.*¶ 104.) Plaintiff then provides a chart combining the total amount of indirect and direct fees paid to USICG for administrative and recordkeeping services to calculate the per participant cost: Plan participants paid between $81 and $142 per year, for an average of $103 per year. (*Id.* ¶ 105.)

Defendants argue Plaintiff's Amended Complaint remains "devoid of any information or data that supports the indirect compensation figures." (Def. Mot. at 7.) Specifically, Defendants contend Plaintiff has not alleged the formulas or figures used to reach her indirect compensation amounts, and instead "describes [her] calculations . . . at a level of generality that renders it impossible to replicate or confirm." *Id.* The Court disagrees. "[C]ognizant that ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail unless and until discovery commences[,]" the Court finds Plaintiff's calculations sufficient for it to reasonably infer Plaintiff identified the amount of direct and indirect fees. *Kohari v. MetLife Group, Inc.*, 2020 WL 3029328, at *7 (S.D.N.Y. Aug. 1, 2022) (citing *Sacerdote v. New York Univ.*, 9 F.4th 95, 107 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1112, 212 L. Ed. 2d 9 (2022)). Plaintiff's formula is simple and clear: to calculate the total amount of indirect compensation received, she multiplied the year-end assets for each investment option by the appropriate revenue sharing rate. (Amend. Compl. ¶ 104.) She also clearly identifies the sources used: Form 5500s, prospectuses, and other publicly available sources. *Id.* This is sufficient.

The Court also rejects Defendants' argument that Plaintiff does not disclose the revenue sharing rate, prospectuses, and "other publicly available sources" she used in her calculations. (*See* Def. Mem. at 7.) To survive a motion to dismiss, Plaintiff "is not required to plead specific evidence or extra facts beyond what is needed to make the claim plausible." *Davis v. Proud*, 2 F. Supp. 3d 46, 479 (E.D.N.Y. 2014) (citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120–1 (2d Cir. 2010)). Defendants' assertions regarding the sources of her calculations challenge the "evidentiary basis" of Plaintiff's claims, which are "not resolvable at this stage." *Kohari*, 2022 WL 3029328, at *8 (citation omitted).

Finally, both *White* and *Marks*, cited by both Defendants and this Court in its prior opinion, are now distinguishable. In *White v. Chevron Corp.*, the plaintiffs' estimate of the recordkeeping fees plan participants paid lacked any factual basis and included fees unrelated to recordkeeping. *See* No. 16-CV-0793-PJH, 2017 WL 2352137, at *18 (N.D. Cal. May 31, 2017), *aff'd*, 752 F. App'x 453 (9th Cir. 2018). Similarly, in *Marks v. Trader Joe's Co.*, the plaintiffs "guess[ed]" without any factual basis the recordkeeping fees, and even admitted they did not know the amount of recordkeeping fees charged by the plan's recordkeeper. *See* No. CV1910942PAJEMX, 2020 WL 2504333, at *5-*6 (C.D. Cal. Apr. 24, 2020). Having provided a methodology and the basis of that methodology, including the Form 5500s, Plaintiff cures this deficiency from her initial Complaint.

B.  *Plaintiff's Allegation that Similar Plans Provide the Same "Basket of Services" as USICG for a Lower Price*

While Plaintiff has cured one deficiency, she has failed to cure the other by alleging the fees were excessive relative to the services rendered.[2] *See Cunningham*, 2022 WL 889164, at *4.  As this

---

[2] In a footnote, Plaintiff asserts that Second Circuit courts have held that *Young* does not apply in ERISA cases, citing *In re M&T Bank Corp.*, No. 16-CV-375 FPG, 2018 WL 4334807 (W.D.N.Y. Sept. 11, 2018) and *Carrigan v. Xerox Corp.*, No. 3:21-CV-1085 (SVN), 2022 WL 1137230 (D. Conn. Apr. 18, 2022). (Pl. Opp. at 15 n.11.)  The Plaintiff misconstrues the former. In *In re M&T Bank Corp.*, the district court notes that *other* courts had held *Young* did not apply in the ERISA context but concluded that the plaintiff successfully alleged the fees were excessive relative to the services rendered. 2018 WL 4334707, at 8 n.10; *Id.* at *8. *Carrigan*, a District of Connecticut case, is merely

9

Court and others have interpreted the Second Circuit's holding in *Young v. General Motors Investment Management Group,* 325 F. App'x 31 (2d Cir. 2009), Plaintiff must draw an apples-to-apples comparison, pleading that the fees are "excessive in relation to to the *specific* services the recordkeeper provided to the *specific plan* at issue." *Wehner v. Genentech, Inc.*, No. 20-CV-06894-WHO, 2021 WL 507599, at *5 (N.D. Cal. Feb. 9, 2021) (hereinafter, "*Wehner I*"). Plaintiff fails to do so.

Here, Plaintiff alleges that USICG charged excessive and unreasonable fees for the type and quality of the administrative and recordkeeping services provided to the Plan when "benchmarked against" other similarly sized plans for similar services. (*Id.* ¶¶ 101, 106.) Specifically, Plaintiff alleges "USICG did not offer any services to the Plan that were unique or of such markedly different quality so as to justify paying twice the reasonable rate for those services." (*Id.* ¶¶ 123-124.) Based on the fees charged by these similar plans for similar services, Plaintiff alleges, the reasonable RSP rate for the relevant period would have been $40 per participant per year. (*Id.* ¶ 107.)

In support, the Amended Complaint provides a table compiled of data from the 2018 Form 5500 filings of several "comparable" retirement savings plans. (*Id.* ¶ 108.) In this table, Plaintiff identifies fifteen plans (including the Plan) and their RPS providers, number of participants, assets, RPS price, and participant price per plan. (*Id.*) The table also includes service codes describing the services provided to each of the plans, which are found on the Form 5500 under Section 2(b) of Schedule C, Service Provider Information. (*Id.* ¶ 116.) Ultimately, the table shows that while the other plans' RPS price per participant ranges between $31 and $52, the one for the Plan is $81. (*Id.* ¶ 108.) Plaintiff contends this "apple-to-apples" comparison shows that during the relevant period, the other

---

persuasive, not controlling. *See Williams v. MTA Bus Co.*, No. 17CV7687 (DF), 2020 WL 4904058, at *2 (S.D.N.Y. Aug. 20, 2020), *aff'd*, 44 F.4th 115 (2d Cir. 2022) (citing *Camreta v. Greene*, 563 U.S. 692, 709 at n.7 (2011)). The Court therefore remains persuaded by the Second Circuit's decision in *Young*, and continues to apply it to the facts alleged here.

comparable plans "all provided the same or superior services to the comparator plans as those provided by USICG to the Plan." (*Id.* ¶ 111.)

But Defendants again argue that Plaintiff fails to sufficiently allege that the Plan's RPS fees were excessive relative to the specific services USICG provided to the Plan. (*See* Def. Mem. at 9.) Defendants point to the service codes for USICG's services as compared to the service codes for comparable RSP providers' services. (*Id.* at 14.) Specifically, Defendants allege none of the comparable competitor plans provide *all* of the services USICG provided, thus "those plans' participants received more limited services than Plan participants." (*Id.* at 9.)

As noted in the Court's prior opinion, *Young* does not require that Plaintiff plead comparable plans provide *identical* services for a lower cost. *Cunningham*, 2022 WL 889164, at *4. That said, Plaintiff must plead facts sufficient to allege a similar-sized plan providing similar services to the Plan could do so at a lower price. Although relying primarily on services codes to support her argument, Plaintiff eventually admits "[b]ecause service codes are entered at the discretion of the service provider, the service codes are not a reliable indicator of the actual services provided because different RPS providers have different practices regarding listing service codes on Form 5500s." (*Id.* ¶ 117.) The Court does not contest Plaintiff's own admission. Plaintiff cannot plausibly allege USICG provides the same or similar services as competitor RSP providers when relying on an unreliable method of comparison.

Other allegations in Plaintiff's Amended Complaint further suggest that USICG provides services different from those it indicates in its Form 5500 or disclosures. Plaintiff alleges that despite Defendants claiming they provide valuation or appraisal services or fees and those service codes appearing in her chart, USICG's participant fee disclosure does not mention valuation or appraisal services or fees. (Amend. Compl. ¶ 122.) Plaintiff therefore indicates service codes may not only be

11

inaccurate, but also misleading. Even Plaintiff's description of the services USICG disclosed it paid to the Plan is incomplete: "[c]ontribution processing, distributions and transactions, trustee and custodial services, statement preparation, online account access, customer service, *and much more*." (*Id.* ¶115 (emphasis added).) Plaintiff cannot allege USICG's fees were excessive when "benchmarked" against other comparable plans when Plaintiff fails to identify a reliable benchmark. Put another way, Plaintiff's factual allegations show she has not reliably or accurately identified the "basket of services" provided to the Plan, and thus she cannot go on to allege that other recordkeepers provide the same "basket of services" at a lower price. Accordingly, Plaintiff has failed to plausibly allege USICG charged the Plan unreasonable, excessive fees for its services.

Furthermore, none of the other allegations in Plaintiff's Amended Complaint are sufficient to support her assertion that the comparable plans provide the "same or superior services." (*See Id.*) Plaintiff's comparison to Sound Physicians is also apples-to-oranges: although it's USICG's second-largest client, it has 50% fewer participants and 65% less in assets, as Plaintiff even acknowledges. (*Id.* ¶ 112; *see also* Pl. Opp. at 10.) Furthermore, Plaintiff pleads no facts regarding the services Sound Physicians receives from USICG. The NEPC survey Plaintiff cites, is also unpersuasive, as again it fails to address the actual *services* provided by the sampled 121 defined contribution plans as opposed to only indicating their amount in assets and number of participants. (*Id.*¶ 114.) Even taking as true Plaintiff's assertion that consulting, pension consulting, and valuation or appraisal services are provided by all the comparable RPS providers, this argument fails to account for the myriad of other services that a RPS provider could provide a defined contribution plan. (*Id.* ¶¶ 119-121.)

Thus, the Court is again left with Plaintiff's conclusory allegations that "all major providers" it identified as comparable plans "provide the same or superior services." (Reply at 6; *See id.* ¶ 115.) These conclusory allegations remain insufficient to support Plaintiff's claim for breach of the duty of

prudence. Accordingly, relying on apples-to-oranges comparisons, Plaintiff fails to sufficiently allege the same "basket of services" provided by USICG were available for less on the market. *Cunningham*, 2022 WL 889164, at *4-5 (citing *Wehner v. Genetech, Inc.*, No. 20-cv-06894-WHO, 2021 WL 2417098, at *5 (N.D. Cal. June 14, 2021)). Plaintiff has thus failed to cure the deficiencies in her Amended Complaint, and her claim for breach of the duty of prudence must be dismissed. *Wehner I*, 2021 WL 507599, at *5 ("[A] plaintiff must plead administrative fees that are excessive in relation to the *specific* services the recordkeeper provided to the *specific* plan at issue."); *see also Kong v. Trader Joe's Co.*, No. CV2005790PAJEMX, 2020 WL 5814102, at *5 (C.D. Cal. Sept. 24, 2020) ("Courts regularly dismiss imprudence claims such as these for failing to allege an adequate market comparison."); *Ferguson*, 2019 WL 4466714, at *8 ("Plaintiffs fail to allege that the administrative 'fees were excessive relative to the services rendered.'"); *White v. Chevron Corp.*, No. 16-CV-0793-PJH, 2016 WL 4502808, at *14 (N.D. Cal. Aug. 29, 2016) (noting that a plaintiff must allege "facts from which one could infer that the same services were available for less on the market." (citing *Young*, 325 F. App'x. at 33)); *Johnson v. Providence Health & Servs.*, No. C17-1779-JCC, 2018 WL 1427421, at *8 (W.D. Wash. Mar. 22, 2018) ("Plaintiff does not plausibly allege that another recordkeeper would have provided the same services at a lower cost than Fidelity.").

## II. Breach of the Duty of Loyalty

For the same reasons articulated in its prior opinion, the Court dismisses Plaintiff's breach of the duty of loyalty claim as duplicative of her breach of the duty of prudence claim. Plaintiff alleges Defendants breached their duty of loyalty by employing their own subsidiary, USICG, as the Plan's recordkeeper, and allowing the Plan to pay USICG unreasonable fees at the expense of the Plan participants and for Defendants' own benefit. (Amend. Compl. ¶¶ 134-135, 167-168.)

ERISA's duty of loyalty charges fiduciaries with acting "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries[ ] and . . . defraying reasonable expenses."

13

29 U.S.C. § 1104(a)(1)(A). "To state a claim for breach of the duty of loyalty, a plaintiff must do more than allege that a defendant failed to act for the exclusive purpose of providing benefits to participants." *Ferguson*, 2019 WL 4466714, at *4. "Rather, a plaintiff must allege plausible facts supporting an inference that the defendant acted for the purpose of providing benefits to itself or someone else." *Id.* (citing *In re DeRogatis*, 904 F.3d 174, 191 (2d Cir. 2018)).

Here, as before, Plaintiff's allegations relating to her claim for breach of the duty of loyalty and those relating to her claim for breach of the duty of prudence closely mirror each other. (*Compare* Amend. Compl. ¶ 157 (breach of the duty of prudence) ("Allowing the Plan to pay multiples of the reasonable per-participant amount for the Plan's retirement plan service fees; . . . Failing to defray reasonable expenses of administering the Plan.") *with id.* ¶ 167 (breach of the duty of loyalty) ("Allowing the Plan to pay USICG multiples of the reasonable per-participant amount for the Plan's RPS fees, which ultimately inured to the benefit of the Plan sponsor; . . . Failing to defray reasonable expenses of administering the Plan.").) In effect, even when construing the Complaint in the light most favorable to her, Plaintiff's claim for breach of the duty of loyalty appears intrinsically dependent on her claim for breach of the duty of prudence. Thus, because Plaintiff essentially "recast[s] purported breaches of the duty of prudence as disloyal acts," she fails to sufficiently state a claim for breach of the duty of loyalty. *See Rosen v. Prudential Ret. Ins. & Annuity Co.*, 718 F. App'x 3, 7 (2d Cir. 2017) (quoting *Sacerdote v. NYU*, No. 16-cv-6284 (KBF), 2017 WL 3701482, at *5 (S.D.N.Y. Aug. 25, 2017)).

Plaintiff's new conclusory allegation is insufficient to save her claim. In her Amended Complaint, Plaintiff alleges Defendants "[c]har[ged] the Plan higher fees to subsidize lower fees paid to USICG by its other defined contribution plan RPS clients." (*Id.* ¶ 167.) As discussed above, Plaintiff merely points to the fact that USICG charged lower fees to Sound Physicians, a plan with

almost 50% fewer participants and 65% less in asserts than the Plan. (*Id.* ¶ 112.) Sound Physicians, Plaintiff alleges, accounted for only 1% of direct compensation (noting that Sound Physicians did not pay indirect compensation through revenue sharing) despite comprising 6% of USICG's total number of plan participants, while the Plan accounts for 20% of direct compensation to USICG despite comprising 12%. (*Id.* ¶¶ 112, 108 n.17.) As noted above, Plaintiff does not identify the services provided to Sound Physicians, and Plaintiff fails to provide any other factual allegations regarding USICG's other clients to further support her contention. Plaintiff's allegations are thus based on speculation and conjecture. Accordingly, the same apples-to-oranges comparison Plaintiff used to support its duty of prudence claim is insufficient to plausibly allege a breach of the duty of loyalty claim. *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955 (Factual allegations must "nudge[] [a plaintiff's] claims across the line from conceivable to plausible.").

Accordingly, the Court dismisses Plaintiff's claim for breach of the duty of loyalty without prejudice. Because the Court dismisses this claim on substantive grounds, it does not reach Defendants' argument that Plaintiff's breach of the duty of loyalty claim is time-barred. (*See* Def Mem. at 17-19.)

### III. Plaintiff's Claim for Failure to Monitor

Lastly, Plaintiff alleges Defendants failed to monitor other fiduciaries because they failed to: (i) monitor and evaluate the performance of individuals responsible for RPS fees for the Plan; (ii) monitor the process by which the Plan RPS provider was evaluated and investigate the availability of lower-cost RPS; (iii) remove individuals responsible for RPS fees whose performance was inadequate in that these individuals permitted the USI Plan to pay the same RPS fees notwithstanding the purported availability of less expensive options; (iv) monitor the process by which the Plan investigated the availability of lower-cost share classes of certain mutual funds; and (v) remove individuals responsible for RPS fees whose performance was inadequate in that these individuals

permitted the USI Plan to pay the same high-cost share classes despite the availability of lower-cost shares. (Amend. Compl. ¶ 176.) As with her duty of loyalty claim, Plaintiff's claim for failure to monitor is premised on her claim that Defendants breached their duty of prudence. (Def. Mem. at 14-15.)

Because "[a] claim for breach of the duty to monitor requires an antecedent breach to be viable," *In re Bear Stearns Cos.*, 763 F. Supp. 2d 423, 580 (S.D.N.Y. 2011), and Plaintiff fails to sufficiently state a claim that Defendants breached either their duties of prudence and loyalty, the Court again concludes that Plaintiff's claim for failure to monitor also fails. *See, e.g.*, *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 368 (2d Cir. 2014) ("Plaintiffs' latter two claims—failure to monitor and breach of co-fiduciary duty—constitute derivative claims that cannot survive absent a viable claim for breach of a duty of prudence."); *In re Lehman Bros. Sec. & ERISA Litig.*, 113 F. Supp. 3d 745, 764 (S.D.N.Y. 2015) ("The duty to monitor claim against Fuld fails because the TCAC fails to allege plausibly any primary breach of fiduciary duty on the part of the Plan Committee Defendants."); *see also Wehner I,* 2021 WL 507599, at *11 ("Because Wehner's [claim for breach of the duty of prudence] is subject to dismissal, his [failure to monitor] claim necessarily fails."); *Davis v. Salesforce.com, Inc.*, No. 20-CV-01753-MMC, 2020 WL 5893405, at *7 (N.D. Cal. Oct. 5, 2020) (dismissing failure to monitor claim as derivative of insufficiently pleaded breach of fiduciary claim); *Dorman v. Charles Schwab Corp.*, No. 17-CV-00285-CW, 2018 WL 6803738, at *7 (N.D. Cal. Sept. 20, 2018) (same).

Without a viable claim for breach of the duties of loyalty or prudence, her new allegations in support of her failure to monitor claim are also insufficient to save her claim. *Fisher v. JP Morgan Chase & Co.*, 703 F. Supp. 2d 374, 389 (S.D.N.Y. 2010), *aff'd*, 469 F. App'x 57 (2d Cir. 2012)

("[P]laintiffs have failed to plead a breach of the duty to monitor because plaintiffs have failed to allege an instance of misconduct that the director defendants failed to detect.").

Therefore, the Court dismisses the entirety of Plaintiff's Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss and DISMISSES Plaintiff's Amended Complaint without prejudice. Plaintiff is granted leave to file a Second Amended Complaint. If Plaintiff chooses to do so, she will have until February 6, 2024 to file a Second Amended Complaint. Defendants are then directed to answer or otherwise respond by March 7, 2024. If Plaintiff fails to file a Second Amended Complaint within the time allowed, and she cannot show good cause to excuse such failure, any claims dismissed without prejudice by this opinion and order may be deemed dismissed with prejudice. The Clerk of Court is directed to terminate the motion at ECF No. 55.

SO ORDERED.

Dated: December 11, 2023
White Plains, New York

NELSON S. ROMÁN
United States District Judge