USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: ___3/31/2026___

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LAUREN CUNNINGHAM, individually and as a representative of a class of participants and beneficiaries in and on behalf of the USI 401(k) PLAN,<br><br>Plaintiff,<br><br>-against-<br><br>USI INSURANCE SERVICES, LLC; BOARD OF DIRECTORS OF USI INSURANCE SERVICES, LLC; USI 401(k) PLAN COMMITTEE; and JOHN AND JANE DOES 1–30,<br><br>Defendants. | **21 CV 01819 (NSR)**<br><br>**OPINION & ORDER** |

NELSON S. ROMÁN, United States District Judge:

Plaintiff Lauren Cunningham ("Plaintiff"), a participating employee of the USI 401(k) Plan (the "Plan"), initiated this putative class action under the Employee Retirement Income Security Act ("ERISA") on March 2, 2021 against Defendants USI Insurance Services, LLC ("USI"), its Board of Directors, the USI 401(k) Plan Committee, and John and Jane Does 1–30 (collectively, "Defendants").

Presently before the Court is Plaintiff's motion for leave to amend the Second Amended Complaint ("SAC") (the "Instant Motion"). (ECF No. 97.) Defendants oppose Plaintiff's motion. For the following reasons, Plaintiff's motion for leave to amend is DENIED.

## BACKGROUND

### A. Factual Background

The SAC comes after this Court's dismissal of Plaintiff's original and first amended complaints following fully briefed motions to dismiss for each. As such, the Court assumes the

1

Parties' familiarity with the facts of this case and provides only a brief factual background. The following facts are drawn from Plaintiff's SAC, the operative complaint in this action, and are assumed to be true for purposes of resolving the Instant Motion.

The Plan is a 401(k) savings plan that provides employees of USI Insurance Services, LLC ("USI") with a vehicle to invest for retirement. (SAC ¶¶ 2, 6.) It is a defined contribution plan, whereby participants contribute a percentage of their earnings through individual accounts. (*Id.* ¶ 37.) Fees assessed to Plan participants include Retirement Plan Services ("RPS") fees charged by a recordkeeper that administers the Plan. (*Id.* ¶¶ 38–39.) The Plan's recordkeeping and administrative services, which are part of RPS, include, but are not limited to, maintaining plan records, tracking participant account balances and investment elections, providing transaction processing, providing call center support and investment education and guidance, providing participant communications, and providing trust and custodial services. (*Id.* ¶¶ 45-47.) USI Consulting Group ("USICG"), a wholly-owned subsidiary of USI, served as the Plan's RPS provider between 2009-2023. (*Id.* ¶ 30.)

Plaintiff joined the Plan in 2017. (*Id.* ¶ 19.) Plaintiff filed this proposed class action pursuant to ERISA, 29 U.S.C. §§ 1001 *et. seq.*, alleging that Defendants caused USICG to be paid twice the reasonable rate for providing RPS to the Plan. (*Id.* ¶¶ 96-162.) Plaintiff alleges that, "[i]nstead of leveraging the Plan's substantial bargaining power to limit expenses," Defendants prioritized their subsidiary's financial interests—and, by extension, their own—by selecting USICG to provide RPS services, thereby causing Plan participants to incur higher fees than they would have paid through USCIG's competitors. (*Id.* ¶¶ 10–11.) On behalf of the Plan and its participants, Plaintiff brings claims against Defendants for breach of their fiduciary duties. (*Id.* ¶¶ 12-14.)

**B. Procedural Background**

Plaintiff filed her initial complaint against Defendants on March 2, 2021 alleging breach of duty of prudence under ERISA, failure to adequately monitor other fiduciaries under ERISA, and breach of duty of loyalty under ERISA. (ECF No. 1.) On March 25, 2022, this Court granted Defendants' motion to dismiss the original complaint for failure to state a claim, finding that Plaintiff failed to provide how she had calculated the Plan's indirect fees and to sufficiently allege that the services provided by other recordkeepers to alleged comparator plans were materially the same as those provided by USCIG. (ECF No. 43.)

Plaintiff filed an amended complaint on May 20, 2022. (ECF 44). On December 11, 2023, this Court again dismissed Plaintiff's claims in full, finding that Plaintiff had cured the first deficiency but still failed to provide a "reliable benchmark" against which to analyze whether USICG's fees were excessive. (ECF 63.)

Plaintiff subsequently filed the SAC on February 6, 2024. (ECF No. 64.) Defendants moved to dismiss the SAC and the Parties fully briefed the motion. (ECF Nos. 73-79, 81.) On June 3, 2024, after oral argument, the Court denied Plaintiff's request for an Order directing Defendants to produce the recordkeeping agreements or, alternatively, for the Court to convert the motion to dismiss into a motion for summary judgment. (ECF No. 80.) As Defendants' motion to dismiss the SAC was pending, Plaintiff sought leave to file the Instant Motion. (ECF No. 93.) The Court granted Plaintiff leave to file the Instant Motion and dismissed Defendants' pending motion to dismiss the SAC without prejudice to renew upon resolution of the Instant Motion. (ECF No. 96.) Plaintiff subsequently filed the Instant Motion, seeking to amend the SAC by asserting one new claim, a prohibited transaction claim, and no new factual allegations. (ECF Nos. 97, 98.) Defendants filed an opposition. (ECF No. 100.)

**LEGAL STANDARD**

**A.  Federal Rule of Civil Procedure 15**

Federal Rule of Civil Procedure 15 ("Rule 15") allows one amendment of pleadings as of right and provide that for subsequent amendments "courts 'should freely give leave' to amend a complaint 'when justice so requires.'" *Williams v. Citigroup, Inc.*, 659 F.3d 208, 212 (2d Cir. 2011) (quoting Fed. R. Civ. 15(a)(2)). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)) (internal quotation marks omitted). Because Rule 15 espouses a "policy in favor of granting leave to amend," *Jaser v. N.Y. Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 243 (2d Cir. 1987), a court may generally exercise its discretion to deny leave "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Bensch v. Estate of Umar*, 2 F.4th 70, 81 (2d Cir. 2021) (quoting *McCarthy*, 482 F.3d at 200); *Holmes v. Grubman*, 568 F.3d 329. 334–35 (2d Cir. 2009); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).

**DISCUSSION**

Plaintiff's sole proposed amendment to the complaint is a prohibited transaction claim under 29 U.S.C. § 1106(a)(1). (*See* Wood Decl., Ex. 2, ECF No. 99.) Defendants argue that Plaintiff's proposed amendment is futile because the proposed additional claim is time-barred, the Supreme Court decision on which Plaintiff relies does not excuse the untimeliness, and the proposed amendment fails to cure the deficiencies in the SAC. (*See generally* Def. Opp., ECF No. 100.) The Court analyzes the Parties' arguments in turn.

4

**I.        Whether Plaintiff's Proposed Prohibited Transaction Claim is Time-Barred**

A claim under 29 U.S.C. § 1106(a)(1) is governed by 29 U.S.C. § 1113, which provides in relevant part that:

> No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
>
> (1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or
>
> (2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

29 U.S.C. § 1113.

The six-year limitations period under Section 1113(1) "is a statute of repose that begins running…on the date of the last action constituting a breach…irrespective of whether the injured party knows of the conduct or injury." *Browe v. CTC Corp.*, 15 F.4th 175, 190 (2d Cir. 2021). "[S]tatutes of repose differ from statutes of limitations in several key respects, most notably in that they are mandatory and not subject to equitable exceptions..." *Id.* at 191. "[T]he statute of repose cannot be circumvented by the relation-back doctrine." *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 451 (S.D.N.Y. 2017) (citing cases).

The three-year limitations period under Section 1113(2) "is a traditional statute of limitations that begins running upon a plaintiff's acquisition of 'actual knowledge' of the breach." *Browe*, 15 F.4th at 190. "Actual knowledge" requires that plaintiff have "knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 193 (2d Cir. 2001). "[W]here the alleged breach stems from a transaction that a plaintiff claims is inherently a statutory breach of fiduciary duty, knowledge of the transaction standing alone may be sufficient to trigger the obligation to file

5

suit." *Young v. GM Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 419 (S.D.N.Y. 2008) (internal citations omitted), *aff'd*, 325 F. App'x 31 (2d Cir. 2009). "Actual knowledge…does not include knowledge of the underlying law." *Browe*, 15 F.4th at 190.

### 1. Timeliness Under Section 1113(1)'s Statute of Repose

Defendants argue that Plaintiff's proposed prohibited transaction claim is untimely under the six-year statute of repose because the alleged prohibited transaction occurred in 2009, when Defendants retained USICG as the RPS provider. (Def. Opp. at 11.) Defendants further contend that, even if the repose period were measured from 2017—when Plaintiff became a Plan participant—the claim would still be time-barred. (*Id.*) In her opening brief, Plaintiff argued that the alleged prohibited claim relates back to the original complaint filed in 2021 pursuant to the "relation-back" doctrine under Federal Rule of Civil Procedure 15(c). (Pl. Mem. of L. at 9.) However, a "statute of repose cannot be circumvented by the relation-back doctrine." *Silvercreek*, 248 F. Supp. 3d at 451 (collecting cases).

In her reply, Plaintiff then relied on *Tibble v. Edison International* to raise a novel "continuing duty to monitor" argument. (Pl. Reply at 2.) In *Tibble*, the Supreme Court held that, while 29 U.S.C. § 1113 sets a six-year time limit on breach of fiduciary duty claims under ERISA, such a claim may be timely where it alleges a breach of the continuing duty of prudence occurring within six years of the filing of the action, even if the initial breach occurred outside that period. 575 U.S. 523 (2015). Relying on this principle, Plaintiff argues that "Defendants repeatedly breached their fiduciary duties by continuing to engage in a prohibited transaction each year from 2009 through 2023, namely rehiring, retaining, and paying their wholly owned subsidiary." (Pl. Reply at 3.) Plaintiff further asserts that "[e]ach year, the fiduciaries were obligated to reassess the reasonableness and permissibility of USCIG's engagement, and each year they chose to renew or

6

continue the arrangement despite their duty to evaluate alternatives. Thus, even though the original decision to hire USCIG occurred outside the six-year period, Defendants' repeated decisions to rehire and retain USICG fall well within it." (*Id.*) Whether the USI recordkeeping arrangement was of indefinite duration or required periodic renewal or rehiring—such that *Tibble might* apply— is unclear from the present record.[1] Nevertheless, Plaintiff's reliance on *Tibble* fails for a more fundamental reason: the argument is raised for the first time in her reply brief. *See Browe v. CTC Corp.*, 15 F.4th 175, 191 ("[I]t is hornbook law that '[a]rguments may not be made for the first time in a reply brief.'") (quoting *Knipe v. Skinner*, 999 F.2d 708, 710-11 (2d Cir. 1993)). This defect is particularly glaring here, where Plaintiff relies on a Supreme Court case pre-dating the original complaint and where Defendants teed up their untimeliness arguments in their pre-motion letter (ECF No. 95), thereby affording Plaintiff ample opportunity to raise this argument based on a potential periodic renewal of the recordkeeping contract in her opening brief. Accordingly, Plaintiff's proposed prohibited transaction claim cannot overcome untimeliness under 29 U.S.C. § 1113(1).

## 2. Timeliness Under Section 1113(2)'s Statute of Limitations

Defendants argue that Plaintiff's prohibited transaction claim is also untimely under the three-year statute of limitations under 29 U.S.C. § 1113(2) given Plaintiff's actual knowledge of all material facts required to state a claim long before Plaintiff filed her original complaint in March 2021. Specifically, Defendants contend Plaintiff had actual knowledge of USICG's role as RPS provider to the Plan since becoming a Plan participant in 2017. (Def. Opp. at 13.) Defendants point

---

[1] In her reply, Plaintiff notes that Defendants "refused Plaintiff's request to submit a copy [of the USI recordkeeping contract]" and contends that the only "reasonable inference" from this "is that the contract was not for an unlimited duration but required repeated rehiring/retention decisions." (Pl. Reply at 2 n.2.) Meanwhile, Defendants argue that the retaining of USICG as RPS provider was a "one time-action" that was "not a continuing violation that could have extended the statute of repose beyond six years." (Def. Opp. at 11.)

to the allegations of services Plaintiff "received or had access to" from USICG in the SAC, including "(i) '[i]nternet access to their accounts through the Plan website maintained by USICG'; (ii) '[t]ransaction processing'; (iii) 'quarterly participant statements'; (iv) 'participant communications'; and (v) 'telephone support' from USICG," as evidence of Plaintiff's actual knowledge of material facts to state a prohibited transaction claim. (*Id.* (quoting SAC ¶ 102.))

Plaintiff does not dispute that she was aware that USICG provided services to the Plan; instead, she argues that she lacked actual knowledge of the material facts necessary to understand that such services constituted a prohibited transaction under 29 U.S.C. § 1106(a)(1)(c) and that Defendants' argument hinges on a false equivalence: that knowing *who* the recordkeeper was is tantamount to actual knowledge that *the nature* of the transaction was prohibited under ERISA. (Pl. Mem. of L. at 9; Pl. Reply at 5, 7.) Plaintiff further argues that the proposed Section 1106 claim relates back to the original complaint filed in 2021. (Pl. Mem. of L. at 9.)

The Parties' positions require more analysis in light of the current state of the law on the meaning of "actual knowledge" under 29 U.S.C. § 1113(2). In *Intel Corp. Investment Policy Committee v. Sulyma*, the Supreme Court affirmed the Ninth Circuit and held that the "actual knowledge" required to trigger the 3-year statute of limitations under 29 U.S.C. § 1113(2) requires a plaintiff to be *actually aware* of the information, not merely that the information was disclosed. 589 U.S. 178 (2020). In *Sulyma*, the Supreme Court clarified that a plaintiff does not necessarily have "actual knowledge" of the information contained in disclosures that he receives but does not read or cannot recall reading; rather, the Supreme Court explained that "to have 'actual knowledge' of a piece of information, one must in fact be aware of it." *Id.* at 184. The Court further made clear that "[n]othing in this opinion forecloses any of the 'usual ways' to prove actual knowledge at any stage in the litigation," including through "inference from circumstantial evidence." *Id.* at 189.

8

Frustratingly, however, *Sulyma* is not particularly helpful here because it does not squarely address *what* exactly a plaintiff must know to trigger the three-year limitations period; instead, it merely applied a textualist, plain meaning analysis to the term "actual knowledge." While the Supreme Court affirmed the Ninth Circuit, its opinion resolved a circuit split on the very narrow issue of whether a participant's mere receipt of disclosures can trigger actual knowledge but did not address what constitutes "actual knowledge" more broadly. The Ninth Circuit reasoned that actual knowledge "must [] mean something between bare knowledge of the underlying transaction, which would trigger the limitations period before a plaintiff was aware he or she had reason to sue, and actual legal knowledge, which only a lawyer would normally possess," ultimately concluding that this "something" in the middle means that "plaintiff was actually aware of the nature of the alleged breach." *Sulyma v. Intel Corp. Inv. Pol'y Comm.*, 909 F.3d 1069, 1075 (9th Cir. 2018), *aff'd*, 589 U.S. 178 (2020). The Ninth Circuit further explained that "[t]he exact knowledge required will…vary depending on the plaintiff's claim." *Id.* It is this "nature of the alleged breach" that Plaintiff contends she was unaware of; specifically, she argues that she lacked actual knowledge that "of the prohibited nature of the transaction." (Pl. Reply at 7.) The Ninth Circuit, of course, is not binding on the Second Circuit, which, instead, has held that actual knowledge requires that plaintiff have "knowledge of all material facts necessary to understand that an ERISA fiduciary has breached his or her duty or otherwise violated the Act." *Caputo*, 267 F.3d at 193. Against this backdrop of case law, this Court finds that Plaintiff had actual knowledge under 29 U.S.C. § 1113(2).

First, as a general matter, the Second Circuit does not require knowledge that a particular transaction is unlawful; rather, it requires knowledge of all material facts necessary to understand that a violation has occurred. Further, actual knowledge may be established through "inference

from circumstantial evidence." *Sulyma*, 589 U.S. at 189. Here, Plaintiff does not dispute that she was aware that USICG served as USI's RPS provider. (Pl. Reply at 5.) This is further corroborated by the allegations in the SAC regarding the services Plaintiff "received or had access to" from USICG, including account access, transaction processing, participant communications, and support services. (SAC ¶ 102.) Beyond her awareness of USICG's role and its provision of these services, Plaintiff necessarily knew the essential contours of the challenged transaction—namely, that the Plan engaged USICG, a USI affiliate, to provide recordkeeping services. These are the material facts underlying Plaintiff's prohibited transaction theory. That Plaintiff may not have appreciated that such an arrangement could give rise to liability under ERISA does not defeat a finding of actual knowledge under 29 U.S.C. § 1113(2) within the Second Circuit. *See Caputo*, 267 F.3d at 193 (requiring knowledge of material facts, not knowledge of the legal significance of those facts). Moreover, this reasoning is consistent with Plaintiff's prior representations to the Court. In opposing Defendants' earlier motions to dismiss, Plaintiff argued that "the mere fact that USICG was the Plan RPS provider" could not establish actual knowledge because she was "not claiming retention of USICG by the Plan was a prohibited transaction under ERISA." (ECF Nos. 33 at 17; 58 at 20.) Having now advanced a prohibited transaction claim based on that very conduct, Plaintiff cannot plausibly maintain that knowledge of USICG's role as the Plan's RPS provider is insufficient to establish actual knowledge. Thus, the Court concludes that Plaintiff had actual knowledge to trigger the three-year limitations period under 29 U.S.C. § 1113(2).

Finally, the relation back doctrine does not cure Plaintiff's untimeliness under the statute of limitations. Even if relation-back is used, the limitations period would only reset to three years before Plaintiff's original complaint was filed in March 2021—that is, to 2018. Even in March

2021, a prohibited transaction claim would not have been filed within three years of when Plaintiff acquired actual knowledge that USICG was the RPS provider in 2017.

Accordingly, because Plaintiff's proposed prohibited transaction claim is untimely under both 29 U.S.C. § 1113(1) and (2), Plaintiff's claim is time-barred.

## II.    *Cunningham v. Cornell University*

Even if Plaintiff's proposed prohibited transaction claim had been timely when she commenced this action, Plaintiff was not precluded from asserting such a claim at the outset of this litigation. Plaintiff argues that she did not assert her proposed prohibited transaction claim earlier because the claim did not become viable until the Supreme Court reversed the Second Circuit's decision in *Cunningham v. Cornell University* and clarified the pleading standard for prohibited transaction claims under ERISA, holding that "plaintiffs seeking to state a § 1106(a)(1)(C) claim must plausibly allege that a plan fiduciary engaged in a transaction proscribed therein, no more, no less." 145 S. Ct. 1020, 1033 (2025). (Pl. Mem. of L. at 1.) Notwithstanding the merits of that decision and its potential applicability here, Plaintiff's reliance on the timing of the Supreme Court's ruling is misplaced and does not excuse her untimeliness.

Plaintiff commenced this action on March 2, 2021. (ECF No. 1.) She contends that a September 29, 2017 decision from the Southern District of New York—*Cunningham v. Cornell University*, 2017 WL 4358769—foreclosed her prohibited transaction claim when she filed her original complaint, and that the Second Circuit's subsequent affirmance on November 14, 2023 likewise barred the claim when she filed her Second Amended Complaint in 2024. She argues that the Supreme Court's reversal on April 17, 2025 now permits her to assert the claim.

This argument does not hold up against the timeline of *Cunningham*. As of 2021, when Plaintiff initiated this action, the Second Circuit had not yet addressed *Cunningham*. Additionally,

11

prior to Plaintiff's original complaint, at least one court in this District had rejected the reasoning adopted by the district court in *Cunningham*. *See Bekker v. Neuberger Berman Group LLC*, 2018 WL 4636841, at *8 (S.D.N.Y. Sept. 27, 2018) (observing that "the weight of opinion from other circuit courts of appeal" aligned with what would later become the Supreme Court's holding in *Cunningham*) (citing *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009)). The Second Circuit did not issue its decision in *Cunningham* until November 2023—well after Plaintiff had already filed both her original and first amended complaints. Plaintiff nonetheless claims that she omitted the prohibited transaction claim "because the district court decision in *Cunningham*…was pending appeal." (Pl. Mem. of L. at 8 n.5.) However, there is no precedent supporting the proposition that a pending appeal somehow renders a district court decision binding on other district courts, thereby precluding Plaintiff from asserting a prohibited transaction claim. It is well-settled that "district court decisions…create no rule of law binding on other courts." *ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.*, 547 F.3d 109, 112 (2d Cir. 2008); *see also, e.g., Pentacon BV v. Vanderhaegen*, 2024 WL 3835334, at *12 (S.D.N.Y. Aug. 15, 2024) ("Controlling decisions include decisions from the United States Court of Appeals for the Second Circuit; they do not include decisions from other circuits or district courts, even courts in the Southern District of New York.") (citation omitted). Under these circumstances, Plaintiff simply cannot contend that binding precedent foreclosed her ability to assert a prohibited transaction claim at the time she initiated this action or even when she first amended her complaint. Thus, nothing explains Plaintiff's decision to assert a new claim nearly three years after the commencement of this action —and after full briefing on two motions to dismiss—other than her own failure to do so earlier.

### III.    Futility

Although leave to amend is to be freely granted when justice so requires, a court may deny leave "for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Bensch*, 2 F.4th at 81 (2d Cir. 2021) (quoting *McCarthy*, 482 F.3d at 200); *see also Foman*, 371 U.S. at 182. The Court need not engage in an extensive analysis of the *Foman* factors or determine whether Plaintiff's proposed prohibited transaction claim cures the deficiencies previously identified by this Court—an issue Plaintiff concedes the proposed claim is not intended to address, (Pl. Reply at 10)—because, as discussed *supra*, the proposed claim is time-barred under both 29 U.S.C. § 1113(1) and § 1113(2). Accordingly, amendment would be futile. *See Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).") (internal citation omitted); *Jones v. City of New York*, 571 F. Supp. 3d 118, 126 (S.D.N.Y. 2021) ("[A] court does not have to wait for a motion to dismiss, and waste judicial time and resources, but may instead deny a motion to amend to add time-barred claims as futile.")

### CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend the SAC is DENIED and the SAC remains the operative complaint.

The Court previously dismissed without prejudice to renew Defendants' motion to dismiss the SAC pending resolution of the Instant Motion. (ECF No. 96.) Accordingly, Defendants are granted leave to renew their motion to dismiss the SAC in accordance with the following briefing schedule: (1) Defendants' moving papers are to be served (not filed) by May 1, 2026; (2) Plaintiff's opposition papers are to be served (not filed) by June 1, 2026; and (3) Defendants' reply papers

are to be served and filed on June 15, 2026. All motion papers are to be filed on the reply date, June 15, 2026. Per this Court's Individual Rules, the Parties are further directed to provide Chambers with two physical copies of their motion papers as they are served and to provide Chambers with one electronic copy of their motion papers as soon as practicable after filing.

The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 97.

SO ORDERED.

Dated: March 31, 2026
White Plains, New York

Hon. Nelson S. Roman
U.S. District Court Judge, S.D.N.Y.